06-CV-00900-CMP

____ FILED    ____ ENTERED
____ LODGED   ____ RECEIVED

**JUN 26 2006**    DB

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF WASHINGTON

Brian Johnson, an individual,                )   Case No.: **CV06-0900**MJB
                                             )
                  Plaintiff,                  )   **CLASS ACTION COMPLAINT**
                                             )
            vs.                               )   **JURY DEMANDED**
                                             )
MICROSOFT CORP., a Washington                 )
corporation,                                  )
                  Defendant.                  )
                                             )

### CLASS ACTION COMPLAINT

Plaintiff Brian Johnson ("Plaintiff"), by his attorneys, states this complaint against Defendant Microsoft Corp., Inc. ("Microsoft" or "Defendant"). Plaintiff's allegations are based on information and belief, except to his own actions, which are based on knowledge. Plaintiff's allegations on information and belief are based on the investigation of his counsel, and facts that are a matter of public record.

### Nature of the Claim

1. This is a class action arising from Microsoft's Windows Genuine Advantage ("WGA") anti-piracy program for Microsoft's Windows XP ("Windows XP") operating system. In order to maintain and protect the integrity and operability of its principal operating system -- Windows XP – in a world of viruses, spyware, and hostile hacking, Microsoft utilizes an online system through which users may obtain updates and security patches to protect and inoculate their systems against the latest security vulnerabilities. As hostile techniques have evolved and



MIKKELBORG
BROZ | WELLS | FRYER P.L.L.C.
ATTORNEYS AT LAW

1001 FOURTH AVENUE  SUITE 3600  SEATTLE
WASHINGTON  98154-1115  TEL: 206.623.5890

**ORIGINAL**

1  become ever more creative and destructive, these security updates have become an essential

2  tool in protecting a system's data, independence, and functionality.   Users have numerous

3  options to obtain these updates, either when they choose, or through automated updates
   without user participation.  Without access to the latest updates, Windows XP systems are

4  highly vulnerable to data theft, control by outside hostile entities, or even destruction of

5  software or hardware.

6  2.  In 2004, Microsoft introduced its so-called Windows Genuine Advantage ("WGA") anti-

7  piracy program, and offered this program as an option to consumers.  The ostensible purpose
   of this program was to allow users to determine if they possessed a licensed version of the

8  Windows operating system on their computers.

9  3.  Beginning in April 2006, Microsoft dramatically expanded the purpose, nature, and

10 functionality of the WGA.  Microsoft also altered the means by which the program was

11 delivered to users computers.  These alterations violated the law in several respects.

12 4.  First, instead of clearly identifying the WGA as an anti-piracy download option, Microsoft
   labeled the program as an "update" or a "high-priority update" in its package of automatic

13 security updates.  Users were never given a full explanation of what the program was or

14 would do once it was installed on their computer.  Nor were users ever given a meaningful

15 opportunity to decline the program.  Further, where information about the WGA was provided,

16 users were given false or misleading information about how the program would function once

17 it was installed.

18 5.  Unbeknownst to users, WGA contained two components: a "Notification" program that
   ostensibly "notified" users if their copy of Windows XP was a "genuine" copy or not, and a

19 "Validation" program that collected information from a user's computer and communicated

20 that information back to Microsoft.

21 6.  Other changes to the WGA included an additional "phone home" function, which contacted

22 Microsoft on a daily basis, communicating certain information about the consumer's/ computer
   to Microsoft.

23 7.  Microsoft provided no information about WGA's nature and purpose to users who had set

24 their Windows XP system for full automatic updates.  For those users who set their Windows

25 XP system for manual updates, Microsoft provided only limited, mostly misleading information
   prior to download.  For those users who had their systems set for full manual updates, only

**Brian Johnson v. Microsoft Corp.**
**Class Action Complaint - 2**
**Case No.:**
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



**MIKKELBORG**
BROZ | WELLS | FRYER INC
ATTORNEYS AT LAW
1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98164-1115  TEL: 206.623.5890

limited, and, for the most part, misleading information was provided prior to download.  No information as to the Validation program was revealed to users prior to its download and installation.  The Notification program did provide certain limited information about it, but the information was provided too late (after install was already taking place), and the information provided was misleading.  In truth and in fact, Microsoft, in its efforts to maximize revenue though anti-piracy measures, mislead consumers and the public as to the true nature, functionality, and operation of its WGA.  Microsoft effectively installed the WGA software on consumers' systems without providing consumers any opportunity to make an informed choice about that software.  Microsoft hid, misrepresented, and/or failed to disclose the true nature, features, and functionality of the WGA software to consumers.  Contrary to the express statements Microsoft made in the inadequate disclosures that were provided, the software collected and communicated private identifying information from consumer's computers and sent that information back to Microsoft on a daily basis.

8. Microsoft's actions as described above violated state consumer protection and anti-spyware statutes.  This lawsuit is brought to provide a remedy to consumers for Microsoft's misleading and unlawful conduct in installing uninstallable licensing enforcement software under the guise and misrepresentation of a security update, hiding the true nature, operation, and functionality of the software that was downloaded, and collecting personal and identifying information from every computer on which this software is installed without informed consent.

### Parties

9. Plaintiff Brian Johnson, ("Plaintiff") is a resident of Los Angeles County, California.  Plaintiff purchased a legitimate version of Windows XP for his computer.  WGA is now installed and operating on his computer.

10. Defendant Microsoft Corp.  is a Washington corporation, which maintains and at all relevant times maintained its offices at One Microsoft Way, Redmond, Washington 98052-6399.  Founded in 1975, Microsoft is the largest worldwide producer of software, services and Internet technologies for personal and business computing.

### Jurisdiction and Venue

11. The aggregate claims of Plaintiff and the proposed class members substantially exceed the sum or value of $5,000,000, and there is diversity of citizenship between proposed class

**Brian Johnson v. Microsoft Corp.**
**Class Action Complaint - 3**
**Case No.:**
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



MIKKELBORG
BROZ | WELLS | FRYER...
ATTORNEYS AT LAW
1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98154-1115  TEL: 206.623.5890

1  members and Defendant. This Court has subject matter jurisdiction over this matter under 28

2  U.S.C. § 1332(d).

3  12. This Court has personal jurisdiction over the Defendant under Wash.  Rev.  Code §

   4.28.080 by virtue of the Defendant's maintenance of headquarters in this District.  Venue is

4  also proper in this District under 28 U.S.C. § 1391(a)(c).

5
                                **Windows Update Channels**

6  13. Microsoft uses a variety of channels to distribute updates to Windows users.   These

7  updates provide essential repairs, updates, and modifications to the Windows operating

8  system and fix security vulnerabilities.

9  14. Microsoft Download Center is an ordinary website that allows users to obtain updates and

   other content by simple download.  The user initiates and approves every download and

10  update.

11  15. Microsoft Update for Windows is a website that uses special software components

12  incorporated in Microsoft's web browser ("ActiveX").  Microsoft Update for Windows provides

13  more functionality than the Download Center.  When a user visits the website, Microsoft

   Update for Windows automatically determines which software components of a users' system

14  can or should be updated and processes the downloads. Like the Download Center, however,

15  the user initiates and approves every download and update.

16  16. Windows Automatic Update is a set of software components that can connect with

17  Microsoft's servers and administer the updating process without using the web browser at all.

18  Windows Automatic Update is specific to Windows XP.  Windows Automatic Update has four

   functionality settings:

19
   - In the automatic mode, updates are automatically downloaded to end-users'
20     computers and then automatically installed.  Users' only intervention comes when
       they must consent to or refuse an end-user license agreement (EULA) from
21     Microsoft;

22   - Automatic download automatically downloads updates, but updates are only
       installed at the user's prompting;
23
   - Automatic notification automatically notifies users that updates are available, but
24     users must manually download and install updates;

   - Finally, users may choose to manually update their computers.  This setting
25     essentially turns Windows update off: users do not receive updates nor do they
       receive notification that updates can be downloaded.

**Brian Johnson v. Microsoft Corp.**
**Class Action Complaint - 4**
**Case No.:**
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98154-1115  TEL: 206.623.5900

17. Manual installation of updates in Windows operates on essentially two settings.  In the Express setting, all available (downloaded) updates are installed without further prompting to the user.  In the Custom setting, users are given information about individual updates and their functionality, and specifically approve the updates' installation on an update-by-update basis.

### Windows Genuine Advantage

18. Microsoft announced an anti-piracy program called Windows Genuine Advantage in 2004. Throughout WGA's history, Microsoft has implemented WGA by requiring users to activate WGA prior to obtaining updates.

19. Microsoft ostensibly uses WGA to identify unauthorized reproductions of Windows.  When activated, WGA collects a variety of data about the hardware parameters on users' computer systems ("hardware data"), together with a 25-digit Product Key particular to each licensed copy of Windows XP.  Microsoft's servers index the hardware data by the Product Key.  WGA validates a user's copy of Windows XP by checking whether the hardware data in Microsoft's servers for the user's Product Key matches the user's hardware.  If the data and the hardware do not match, WGA identifies the Windows XP installation as an unauthorized copy.

20. Microsoft's director of Genuine Windows, David Lazar, stated:

> The system works by identifying unique characteristics of a system and implanting a software key that can be read by Microsoft when updates are requested.  The only way to remove the key is to reformat the hard drive. . . . . . The key won't be used to identify individual users, only individual systems. . . . . . I would go back to our privacy policy, which says we have no knowledge of the identity of the users, so a user shouldn't be concerned about the use of that key."

21. However, WGA can malfunction and mistakenly identify a licensed Windows XP copy as unlicensed when, for example, a user transfers his legitimate Windows XP copy to another system with different hardware or significantly changes the hardware on the original system (e.g. installs a new hard drive) .  In this way, WGA impinges on users' fair use rights under 17 U.S.C. § 117(a)(2) to use legally space-shifted Windows XP copies.

22. When Microsoft first introduced WGA in September 2004, it limited the application of WGA activation to Microsoft's Download Center.  Microsoft's Download Center offers Windows XP users updated software that provides additional functionality and fix security vulnerabilities.



**MIKKELBORG**
B R O Z | W E L L S | F R Y E R ᴘꜱ
ATTORNEYS AT LAW

1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98154-1115  TEL: 206 623 5890

1  In order to use the Download Center to obtain anything other than critical updates, users had

2  to download and activate WGA.

3  23. On July 25, 2005, Microsoft expanded the WGA ("WGA 2005"). Microsoft required all

   customers using Windows Automatic Update, Microsoft Update for Windows content, and the

4  Download Center to validate their copies of Windows XP via WGA 2005 prior to obtaining

5  updates. WGA 2005 did not use the Product Key, but prompted users to download a software

6  component (an "ActiveX control") which checked the authenticity of users' Windows XP and, if

7  the copy was validated, stored a special download key on the PC for future verification. At the

8  time WGA 2005 was commenced, Microsoft stated: "The validation process does not collect

   any information that can be used by Microsoft to identify or contact the user."

9  24. On Microsoft's website, a FAQ regarding information collection associated with the WGA

10 stated:

11              What information is collected from my machine?

12              The genuine validation process will collect information about your
               system, such as Windows product key, PC manufacturer, and operating
13              system version, to determine if Windows is genuine. This process does
               not collect or send any information that can be used to identify you or
14              contact you. The complete list of information collected in the validation
               process is shown below:

15
               OEM product key
16             PC Manufacturer
               OS version
17             PID/SID
               BIOS info (make, version, date)
18             BIOS MD5 Checksum

19 25. The Microsoft FAQ further stated:

20             Microsoft does not collect any information during this process that can
               be used to identify you or contact you.

21
               The information is used for three purposes: Web page flow,
22             demographics, and to confirm user input. Web page flow means
               tailoring pages presented based on the user's responses. Demographic
23             information helps Microsoft to understand regional differences in
               Windows usage, and helps us tailor responses appropriately. User input
24             is often compared against data collected from the PC in order to
               determine whether to grant a user's request for additional access.

25

**Surreptitious Installation of WGA 2006**



MIKKELBORG
BROZ | WELLS | FRYER PLLC
ATTORNEYS AT LAW

1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98154-1115  TEL: 206.623.5680

1   26. In April 2006, Microsoft again expanded WGA ("WGA 2006"). Microsoft implemented WGA

2   2006 by surreptitiously packaging one of its components ("WGA Verification") with updates

3   downloaded from Windows Automatic Update.   These updates from Windows Automatic
    Update installed WGA 2006 Verification, without specific notice to or approval from the users,

4   even where the users sought to specifically control what was installed on their system through

5   the Custom installation setting.

6   27. In other words, every Windows XP user from the United States, Great Britain, New

7   Zealand or Australia who obtained an update through Windows Automatic Update after April

8   2006 could not install that update without installing and activating WGA Verification. Further,
    the update did not provide any user notice of, or an opportunity to decline, the installation of

9   WGA Verification, even when users specifically sought such notice and opportunity by using

10  the "Custom" setting.

11  28. WGA Verification collects and transmits an enormous amount of sensitive information to

12  Microsoft.  WGA Verification validates its Windows XP installation on a daily basis.  In addition
    to the information collected above, WGA Verification also collects users' Internet Protocol

13  ("IP") address and their domain name server's IP address.

14  29. After WGA Verification is installed, Windows Automatic Update proceeds to offer users

15  WGA 2006's other component ("WGA Notification").  Windows Automatic Update characterizes

16  WGA 2006 Notification as a "high-priority update" or a "critical update." These

17  characterizations are misleading, inasmuch as other high-priority and critical updates on
    Windows Automatic Update are security-related.   Further, one of the WGA's supposed

18  advantages touted by Microsoft was "access to updates, enhancements, and innovations that

19  *help you protect . . . your computer.*"   Though the WGA Notification provides users with a

20  limited opportunity to decline installation of WGA Notification, the explanation and description

21  of what is being declined is highly misleading, and hence users are not provided with a true

22  opportunity to either exercise informed consent or informed denial of installation.

23

24  30. Windows Automatic Update requires users to affirm an end user licensing agreement

25  ("EULA") before installing WGA Notification.  The EULA for WGA Notification states, *inter alia*:

> This software is a pre-release version of the software intended to
> update the technological measures in Windows XP which are designed



1
2
> to prevent unlicensed use of Windows XP.  By using the software, you accept these terms.  If you do not accept them, do not use the software....

3
4
> You will not be able to uninstall the software but you can suppress the reminders through the software icon in the system tray.  ...

5
6
7
8
9
10
> Consent for Internet-Based Services.  The software feature described below connects to Microsoft or service provider computer systems over the Internet.  In some cases, you will not receive a separate notice when they connect.  You may switch off this feature or not use it.  ...  By using this feature, you consent to the transmission of this information.  Microsoft does not use the information to identify or contact you.  Computer Information.  The software uses Internet protocols, which sends to Microsoft computer information, such as your Windows XP product key, PC manufacturer, operating system version, Windows XP product ID, PC BIOS information, user locale setting, and language version of Windows XP.

11  31. Although Microsoft provides limited opportunity to decline WGA Notification's installation, Microsoft does not provide users notice of and opportunity to decline WGA Verification.

12
13
14
15
16
17  32. When WGA 2006 identifies copies of Windows XP as unlicensed, it notifies users that their copies of Windows XP are unlicensed and encourages them to purchase legal copies.  WGA 2006 causes these notifications to appear as a pop-up notice on the Windows login screen, informing the user that his copy of the OS is counterfeit and that he should get a genuine copy.  WGA 2006 also permanently "tattoos" a notification stating "This copy of Windows is not genuine.  You may be a victim of software counterfeiting" to the bottom right-hand corner of the login screen.

18
19
20  33. WGA 2006 also causes another pop-up message, which states that "You may be a victim of software counterfeiting.  This copy of Windows is not genuine.  Click this balloon to resolve now" to be appear on users' screens at random times whenever the computer is in use.

21  **Class Action Allegations**

22
23
24
25  34. Plaintiff brings this Complaint against Defendant on behalf of himself and all persons and entities in the United States that own a computer on which Microsoft installed WGA 2006, pursuant to Federal Rule of Civil Procedure 23 (the "Class").  Plaintiff also brings this Complaint against Defendant on behalf of himself and all persons and entities within a distinct subclass of Class members who reside, own or operate an affected Windows XP system in California (the "California Subclass").  Excluded from both the Class and California Subclass

**Brian Johnson v. Microsoft Corp.**
**Class Action Complaint - 8**
**Case No.:**
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



MIKKELBORG
BROZ | WELLS | FRYER PS
ATTORNEYS AT LAW
1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON  98154-1115  TEL: 206.623.5890

are i) any Judge or Magistrate presiding over this action and members of their families; ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former employees, officers and directors; and iii) persons who properly execute and file a timely request for exclusion from the class and iv) the legal representatives, successors or assigns of any such excluded persons.

35. *Numerosity.* The exact number of Class and California Subclass members is unknown and is not available to Plaintiff, but it is clear that individual joinder of all members of either the Class or California Subclass is impracticable. The majority of households in the United States have a computer and Windows XP is installed on the vast majority of those computers; the California Subclass alone has millions of members. Class members can be identified by the presence of WGA 2006 on their Windows XP system. California Subclass members can be identified by the presence of WGA 2006 on their Windows XP system and their residence in California.

36. *Class Commonality.* Common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. These common questions include whether:

 (a) Whether Microsoft adequately disclosed WGA 2006 to Windows Automatic Update users;

 (b) Whether Microsoft adequately disclosed the nature and purpose of WGA;

 (c) Whether Microsoft made representations that WGA 2006 had characteristics, uses, benefits or qualities which it did not have;

 (d) Whether Microsoft made false and/or misleading statements of fact to the Class members and the public concerning the content of updates containing WGA Verification;

 (e) Whether, by its misconduct as set forth herein, Microsoft has engaged in unfair or unlawful business practices with respect to the installation of WGA;

 (f) Whether, by its misconduct as set forth herein, Microsoft engaged in unfair, deceptive, untrue, or misleading promotion, implementation and operation of WGA 2006;



1

2

    (g)    Whether, by its misconduct as set forth herein, Microsoft violated Wash. Rev. Code § 19.270.040;

3

4

    (h)    Whether plaintiff and the Class are entitled to relief, and the amount and nature of such relief.

5

6

7

37. *California Subclass Commonality*: Common questions of fact and law exist as to all members of the California Subclass and predominate over the questions affecting only individual California Subclass members.  These common questions include whether:

8

    (a)    Whether Microsoft adequately disclosed WGA 2006 to Windows Automatic Update users;

9

10

    (b)    Whether Microsoft adequately disclosed the nature and purpose of WGA;

11

12

    (c)    Whether Microsoft made representations that WGA 2006 had characteristics, uses, benefits or qualities which it did not have;

13

14

    (d)    Whether Microsoft made false and/or misleading statements of fact to the California Subclass members and the public concerning the content of updates containing WGA Verification;

15

16

    (e)    Whether, by its misconduct as set forth herein, Microsoft has engaged in unfair or unlawful business practices with respect to the to the installation of WGA;

17

18

    (f)    Whether, by its misconduct as set forth herein, Microsoft engaged in unfair, deceptive, untrue, or misleading promotion, implementation and operation of WGA 2006;

19

20

    (g)    Whether, by its misconduct as set forth herein, Microsoft violated Cal. Bus. & Prof. Code § 22947.4;

21

    (h)    Whether plaintiff and the Class are entitled to relief, and the amount and nature of such relief.

22

23

24

25

38. *Typicality*: Plaintiff's claims are typical of the claims of other members of both the Class and California Subclass, as the Plaintiff and other Class members sustained damages arising out of Defendant's wrongful conduct based upon the same transactions, upon the same misrepresentations, and upon the same material omissions which were made uniformly to the Plaintiff and the public.

**Brian Johnson v. Microsoft Corp.**
**Class Action Complaint - 10**
**Case No.:**
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



MIKKELBORG
BROZ | WELLS | FRYER₅ₚ
ATTORNEYS AT LAW

1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98164-1115  TEL: 206.623.5890

1   39. *Adequate Representation*: Plaintiff will fairly and adequately represent and protect the
2   interests of the other members of both the Class and California Subclass, and has retained
3   counsel competent and experienced in complex class actions.  Plaintiff has no interest
4   antagonistic to those of the Class or to the California Subclass, and Defendant has no
    defenses unique to Plaintiff.

5   40. *Predominance and Superiority*: Pursuant to FRCP 23(b)(3) this class action is appropriate
6   for certification because class proceedings are superior to all other available methods for the
7   fair and efficient adjudication of this controversy, since joinder of all members is impracticable.
8   The damages suffered by each individual Class member will likely be relatively small,
    especially given the burden and expense of individual prosecution of the complex litigation
9   necessitated by Defendants' actions.  It would be virtually impossible for the Class members
10  individually to obtain effective relief from Defendants' misconduct.  Even if the class members
11  themselves could sustain such individual litigation, it would still not be preferable to a class
12  action, because individual litigation would increase the delay and expense to all parties due to
    the complex legal and factual controversies presented in this Complaint.  By contrast, a class
13  action presents far fewer management difficulties and provides the benefits of single
14  adjudication, economy of scale, and comprehensive supervision by a single Court.  Economies
15  of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

16                                  **Count I:**
                **Violation of the Washington Consumer Protection Act,**
17                     **Washington Rev. Code § 19.86.020**

18  41. Plaintiff incorporates the above allegations by reference as if set forth herein at length.

19  42. Microsoft installed WGA Verification without the consent of Plaintiff or the other Class
20  members, collected personal information, including the IP addresses of Plaintiff and other
21  Class members, and induced Plaintiff and other Class members to install WGA Notification
    through misleading and false representations that WGA 2006 was necessary for the security of
22  their computer.

23  43. Further, Microsoft concealed material facts regarding Windows Automatic Update, WGA
24  2006, WGA Verification and WGA Notification from Plaintiff and other Class members,
25  including the existence of WGA Verification and its inclusion in the updates from Windows
    Automatic Update.  Consumers relied on this information when making decisions about using



1 | Windows Automatic Update and installing particular downloads, as well as purchased Windows
2 | XP.

3 | 44. Plaintiff and other Class members relied upon Defendant's misrepresentations to their
    | detriment.  Had Defendant disclosed this material information regarding Windows Automatic
4 | Update and WGA Verification to Plaintiff and the other Class members, they would not have
5 | installed WGA Verification.

6 | 45. These actions are unfair methods of competition and/or unfair or deceptive acts or
7 | practices and violate Wash.  Rev.  Code §§ 19.86.020 and 19.86.090.

8 | 46. Microsoft committed these acts in the conduct of trade or commerce.
    | 47. These acts have an impact on the public interest.

9 | 48. Through WGA Verification, Defendant caused Class members' Windows XP systems to
10 | collect and transmit to Microsoft a variety of sensitive information, entirely without Class
11 | members' consent.    Defendant falsely told Class members that WGA Verification was
12 | necessary for the security of Class members' Windows XP systems, while its sole purpose was
    | to protect Defendant's commercial interests.
13 | 49. These acts injured Plaintiff and the other Class members: Microsoft's actions impaired and
14 | diminished the right of Plaintiff and the other members of the Class to the exclusive control
15 | and possession of their computer systems.  As a result of Microsoft's breach of Wash.  Rev.
16 | Code §§ 19.86.020 and 19.86.090, Plaintiff and the other Class members have suffered
17 | damages in an amount to be determined at trial.

18 | **Count II:**

19 | **Violation of Washington's Anti-Spyware Laws,**<br>**Washington  Rev. Code § 19.270.040**

20 | 50. Plaintiff incorporates the above allegations by reference as if set forth herein at length.

21 | 51. Wash.   Rev.   Code § 19.270.040(1) prohibits inducing authorized users to install a
22 | software component onto the computer by intentionally misrepresenting that installing the
23 | component is necessary for security or privacy reasons.  Microsoft's representation about the
    | necessity of installing WGA Notification for security reasons, as alleged above, violated this
24 | prohibition.

25 |



1   52. Defendant falsely told Class members that WGA Verification was necessary for the security
2   of Class members' Windows XP systems, while its sole purpose was to protect Defendant's
3   commercial interests.

4   53. These acts injured Plaintiff and the other Class members: Microsoft's actions impaired and
5   diminished the right of Plaintiff and the other members of the Class to the exclusive control
    and possession of their computer systems.

6   54. These acts injured Plaintiff and the other Class members: Microsoft's actions impaired and
7   diminished the right of Plaintiff and the other members of the Class to the exclusive control
8   and possession of their computer systems.  As a result of Microsoft's breach of Wash.  Rev.
9   Code § 19.270.040(1), Plaintiff and the other Class members have suffered damages in an
    amount to be determined at trial.

10

11  **Count III:**
    **Violation of the California Consumer Legal Remedies Act,**
12  **California Civil Code § 1750 et seq.**

13  55. Plaintiff incorporates the above allegations by reference as if set forth herein at length.

    56. The Consumer Legal Remedies Act ("CLRA") applies to Defendant's actions and conduct
14  described herein because it extends to transactions that are intended to result, or which have
15  resulted, in the sale of goods to consumers.

16  57. Plaintiff and each California Subclass member is a "consumer" within the meaning of Cal.
17  Civ.  Code § 1761(d).

    58. Copies of Windows XP are "goods" and Windows Automatic Update is a "service" within
18  the meaning of Cal.  Civ.  Code § 1761(a), (b).

19  59. Defendant has violated the CLRA in at least the following respects:

20          (a)     in violation of Cal.  Civ.  Code § 1770(a)(5), Defendant has represented
21                  that Windows Automatic Update, WGA 2006, and WGA Notification have
                    characteristics, uses, benefits, or quantities which they do not have;

22          (b)     in violation of Cal.   Civ.   Code § 1770(a)(14), Defendant has
23                  represented that Windows Automatic Update, WGA 2006, and WGA
                    Notification confers or involves rights, remedies, or obligations, which it
24                  does not have or involve, or which are prohibited by law.

25  60. Microsoft concealed material facts regarding Windows Automatic Update, WGA 2006, WGA
    Verification and WGA Notification from Plaintiff and other California Subclass members,
    including the existence of WGA Verification and its inclusion in the updates from Windows



1    Automatic Update.  Consumers relied on this information when making decisions about using

2    Windows Automatic Update and installing particular downloads, as well as purchased Windows

3    XP.

4    61. Had Defendant disclosed this material information regarding Windows Automatic Update
and WGA Verification to Plaintiff and the other California Subclass members, they would not

5    have installed WGA Verification.

6    62. Plaintiff and other California Subclass members relied upon Defendant's misrepresentations

7    to their detriment.

8    63. Microsoft's failure to disclose WGA Verification in the updates from Windows Automatic
Updates are omissions and concealments of material fact that constitute unfair, deceptive, and

9    misleading business practices in violation of Cal.  Civ.  Code § 1770(a).

10    64. Microsoft's deceptive acts and omissions occurred in the course of selling a consumer

11    product and have occurred continuously through the filing of this Complaint.

12    65. Through WGA Verification, Defendant caused California Subclass members' Windows XP
systems to collect and transmit to Microsoft a variety of sensitive information, entirely without

13    California Subclass members' consent.  Defendant falsely told Class members that WGA

14    Verification was necessary for the security of California Subclass members' Windows XP

15    systems, while its sole purpose was to protect Defendant's commercial interests.

16    66. These acts injured Plaintiff and the other California Subclass members: Microsoft's actions
impaired and diminished the right of Plaintiff and the other members of the California Subclass

17    to the exclusive control and possession of their computer systems.  As a direct and proximate

18    result of Microsoft's violation of Cal.  Civ.  Code § 1770, *et seq.*, Plaintiff and other California

19    Subclass members have suffered irreparable harm.  Plaintiff, on behalf of himself and on

20    behalf of the California Subclass, seeks injunctive relief.

21    **Count IV:**

22    **Violation of California's Anti-Spyware Laws,**
**California Business & Professions Code § 22947.4**

23

24    67. Plaintiff incorporates the above allegations by reference as if set forth herein at length.

25    68. Cal.  Bus & Prof Code § 22947.4(a) prohibits inducing authorized users to install a software
component onto the computer by intentionally misrepresenting that installing the component

Brian Johnson v. Microsoft Corp.
Class Action Complaint - 14
Case No.:
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



MIKKELBORG
BROZ | WELLS | FRYER PLLC
ATTORNEYS AT LAW
1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98154-1115   TEL: 206.623.5890

1   is necessary for security or privacy reasons.  Microsoft's representation about the necessity of

2   installing WGA Notification for security reasons, as alleged above, violated this prohibition.

3   69. Defendant falsely told California Subclass members that WGA Verification was necessary

    for the security of California Subclass members' Windows XP systems, while its sole purpose

4   was to protect Defendant's commercial interests.

5   70. These acts injured Plaintiff and the other California Subclass members: Microsoft's actions

6   impaired and diminished the right of Plaintiff and the other members of the California Subclass

7   to the exclusive control and possession of their computer systems.  As a result of Microsoft's

    breach of Cal.  Bus & Prof Code § 22947.4(a), Plaintiff and the other California Subclass

8   members have suffered damages in an amount to be determined at trial.

9

                               **Count V:**
10                  **Violation of California's Unfair Competition Law,**
                    **California Business & Professions Code § 17200**
11

12  71. Plaintiff incorporates the above allegations by reference as if set forth herein at length.

    72. Plaintiff brings this cause on action on behalf of himself, on behalf of the California
13  Subclass, and in his capacity as private attorney general.

14  73. Defendant has engaged in unfair, unlawful and fraudulent business acts and practices as

15  set forth above.

16  74. By engaging in the above-described acts and practices, Defendant has committed one or

    more acts of unfair competition within the meaning of Cal.  Bus.  & Prof.  Code § 17200, *et*
17  *seq.*

18  75. Defendant's acts and practices have and/or are likely to deceive members of the

19  consuming public.

20  76. Defendant's acts and practices are unlawful because they violate Cal.  Civ.  Code §

    1770(a)(5), (9) and Cal. Bus.  & Prof.  Code § 22947.4(a).
21

22  77. Through WGA Verification, Defendant caused Class members' Windows XP systems to

    collect and transmit to Microsoft a variety of sensitive information, entirely without California
23  Subclass members' consent.  Defendant falsely told Class members that WGA Verification was

24  necessary for the security of California Subclass members' Windows XP systems, while its sole

25  purpose was to protect Defendant's commercial interests.

    78. These acts injured Plaintiff and the other California Subclass members: Microsoft's actions
    impaired and diminished the right of Plaintiff and the other members of the California Subclass

Brian Johnson v. Microsoft Corp.
**Class Action Complaint - 15**
Case No.:
J:\Main\J\JN-JR\Johnson, Brian\Pleadings\Complaint062606.doc



1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON  98154-1115  TEL: 206.623.5890

1  to the exclusive control and possession of their computer systems. The operation of the WGA
2  2006 program utilizes computer resources and bandwidth, diminishing that which is available
3  for plaintiff and the class.    This diminution in resources and bandwidth constitutes a
4  diminution in the use, value, speed and capabilities  of the computer, resulting in actual
5  damages to the plaintiff and members of the class.    As a result of Microsoft's unfair
   competition, Plaintiff and the other California Subclass members have suffered actual damages
6  in an amount to be determined at trial.  Plaintiff, on behalf of himself and on behalf of each
7  member of the California Subclass, seek individual restitution, injunctive relief and other relief
8  allowed under Cal. Bus. & Prof. Code § 17200, et seq.

9       WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor
10  and against Defendant as follows:

11      (a)   With respect to Counts I and II, declaring the action to be a proper
             class action and designating Plaintiff and his counsel as representatives
12           of the Class;

13      (b)   With respect to Counts III, IV and V, declaring the action to be a proper
             class action and designating Plaintiff and his counsel as representatives
14           of the California Subclass;

15      (c)   With respect to Counts I, III and V, as applicable to the Class and
             California Subclass, respectively, awarding injunctive and equitable
16           relief, including restitution, in an amount to be determined at trial
             including, *inter alia*: (i) prohibiting Defendant from engaging in the acts
17           of unfair competition or deceptive trade practices alleged above; (ii)
             requiring Defendant to disgorge all of its ill-gotten gains to Plaintiff and
18           the other class members, or to whomever the Court deems appropriate;
             (iii) requiring Defendant to delete all data surreptitiously or otherwise
19           collected through the acts of unfair competition or deceptive trade
             practices alleged above; (d) requiring Defendant to provide Plaintiff and
20           the other class members a tool to uninstall WGA and an opportunity to
             decline any further installation of WGA; (e) awarding Plaintiff and class
21           members full restitution of all monies wrongfully acquired by Defendant
             by means of the wrongful conduct alleged herein; and (f) ordering data,
22           funds or other assets obtained by unlawful means as alleged above to
             be impounded, or a trust imposed, to avoid dissipation, fraudulent
23           transfers, and/or concealment of such assets by Defendant;

24      (d)   With respect to Counts I and II, awarding damages to the Class in an
             amount to be determined at trial;
25  
       (e)   With respect to Count IV, awarding damages to the California Subclass
             in an amount to be determined at trial;



(f) Awarding Plaintiff reasonable attorney's fees and costs;

(g) Awarding pre- and post-judgment interest; and

(h) Granting such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: June 26, 2006                    MIKKELBORG, BROZ, WELLS & FRYER, PLLC


_____
Jess G. Webster, WA Bar No. 11402
Mitchell A. Broz, WA Bar No. 17095
Attorneys for Plaintiff

AND

Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, California 90058
Telephone: (323) 585-8696

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
19 Fulton Street, Suite 400
New York, NY 10038
Telephone: (877) 773-5469

(APPLICATION TO PARTICIPATE *PRO HAC VICE* TO BE SUBMITTED)



**MIKKELBORG**
BROZ | WELLS | FRYER...
ATTORNEYS AT LAW

1001 FOURTH AVENUE   SUITE 3600   SEATTLE
WASHINGTON 98154-1115  TEL: 206.623.5890