UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN JOHNSON, et al.,

    Plaintiffs,

  v.

MICROSOFT CORPORATION,

    Defendant.

CASE NO. C06-0900RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the Defendant's and Plaintiffs' motions for partial summary judgment (Dkt. ## 149, 186). The court has considered the parties' briefing and supporting evidence, and has heard from the parties at oral argument. For the reasons explained below, the court GRANTS the Defendant's motion (Dkt. # 149), and thereby DENIES the Plaintiffs' motion (Dkt. # 186).

## II. BACKGROUND[1]

This is a putative class-action lawsuit arising from Defendant Microsoft Corporation's ("Microsoft") installation of the Windows Genuine Advantage ("WGA") program onto Plaintiffs' computers using the Windows XP operating system.

---

[1] The facts of this case were also described in the order ruling on the Defendant's first motion for partial summary judgment. *See* Order (Dkt. # 137). The court reiterates some of that description here, and will also address specific facts as necessary in its later analysis.

ORDER – 1

When a person buys a computer with Windows XP, the person must complete installation of the operating system in order to use the computer. During the installation process, the Windows XP End User License Agreement ("EULA") is displayed on the user's computer screen and the user must accept its terms to complete installation of Windows XP. After Windows XP is installed, it must be activated within 30 days after the user first runs the software. During activation, the computer transmits a unique 25-character license key to Microsoft to confirm that the user's copy of Windows XP is genuine and that the software has not already been installed on another user's computer.

Microsoft also verified the validity of a user's version of Windows XP via WGA. WGA sends information about the user's computer system to Microsoft, and notifies users if their copy of Windows XP is not genuine. Microsoft distributed WGA via three of Windows XP's updates services: Automatic Updates, Windows Update, and Microsoft Update. Users can adjust Automatic Updates to install updates automatically, manually, or not at all. Users can also visit the Windows Update or Microsoft Update websites to review and download updates.

In April 2008, Plaintiffs filed a second amended consolidated complaint, raising claims for unjust enrichment, breach of the EULA,[2] violation of Washington's Consumer Protection Act, and trespass to chattels, nuisance and interference with property.

Microsoft moved for summary judgment against the EULA claim, and Plaintiffs subsequently moved for summary judgment on the same claim.

### III. ANALYSIS

**A. Legal Standard on Summary Judgment.**

---

[2] There are multiple versions of the Windows XP EULA. *See* 2d Am. Consol. Compl. (Dkt. # 138) ¶ 49; Kirkwood Decl. (Dkt. # 150), Exs. B & D; Quackenbush Decl. (Dkt. # 151), Exs. A-E, G. *See also* Def.'s Mot. (Dkt. # 149), App. Unless otherwise indicated, the EULA language relevant for purposes of resolving the parties' motions is the same in each variation. For the sake of simplicity, the order typically refers to "the EULA" in the singular.

ORDER – 2

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B. Microsoft is Entitled to Summary Judgment Against Plaintiffs' Claim for Breach of Contract.**

The Plaintiffs contend that Microsoft breached the EULA in four ways: (1) Microsoft used WGA to validate Plaintiffs' copies of Windows XP despite the EULA's promise that validation occurred via the initial activation process; (2) Microsoft distributed WGA to Windows XP users for automatic download, even though WGA was not a Windows XP "upgrade" or "fix"; (3) Microsoft collected Plaintiffs' IP addresses via WGA; and (4) Microsoft distributed WGA through Automatic Updates, even though it is not a high-priority update. Microsoft argues that none of these acts constitutes a breach of the EULA.

A party claiming breach of contract must show that the contract imposes a duty that was breached. *Seabed Harvesting, Inc. v. Dep't of Natural Res.*, 114 Wn. App. 791, 797 (2002). Summary judgment against a claim for breach of contract is appropriate if the plaintiff "cannot point to any specific provision of the [contract] that was breached." *Elliott Bay Seafoods, Inc. v. Port of Seattle*, 124 Wn. App. 5, 12 (2004).

The parties agree that the EULA terms are unambiguous. *See* Plaintiffs' Opp'n (Dkt. # 183) at 11; Def.'s Reply (Dkt. # 189) at 2. Thus, the court will be governed by the plain language of the EULA when addressing each of the alleged breaches in turn.

**1. The EULA Does Not Prohibit Microsoft's Use of WGA for Validation Purposes.**

ORDER – 3

The Plaintiffs claim that Microsoft's use of the WGA to validate their copies of Windows XP breaches the EULA's mandatory activation provision, which provides: "There are technological measures in this (Windows XP) Software that are designed to prevent unlicensed use of the Software. Microsoft will use those measures to confirm you have a legally licensed copy of the Software." *See* Kirkwood Decl. (Dkt. # 150), Ex. B. Plaintiffs contend that the use of the words "this" and "those" in this provision prohibits Microsoft from using any other program – such as WGA – to validate the user's copy of Windows XP.

Plaintiffs' contention contradicts the plain language of the contract. The EULA provision does not prohibit Microsoft from using any particular validation measures; it only obligates Microsoft to use measures in the Windows XP software to confirm that the user has a legally licensed copy. The contract is silent as to other validation measures.[3] Because the Plaintiffs have not shown that the EULA prohibits Microsoft from using WGA to validate Windows XP, Microsoft did not breach the EULA when it did so. Plaintiffs' first basis for their contract claim thus fails.

### 2. The EULA Does Not Prohibit the Installation of WGA Via Automatic Download.

Some of the Plaintiffs agreed to a EULA that authorized Microsoft to provide "upgrades or supplements" to the Windows XP software:

> **INTERNET-BASED SERVICES COMPONENTS**. The SOFTWARE contains components that enable and facilitate the use of certain Internet-based services. You acknowledge and agree that MS, Microsoft Corporation or their subsidiaries may automatically check the version of the

---

[3] Plaintiffs devote numerous pages of their opposition brief to arguments regarding breach by anticipatory repudiation, claiming that Microsoft imposed a new condition (installation of WGA) on Windows XP users and then refused to perform EULA obligations if users rejected WGA. Aside from the concerns raised by the presentation of a new argument in an opposition brief, Plaintiffs have failed to present any evidence to support that argument. Instead, the evidence shows that WGA was distributed to users via configurable update services and that the EULA does not obligate Microsoft to provide any updates that were withheld from those who rejected WGA. Because the evidence does not support Plaintiffs' anticipatory repudiation argument, and because the argument was presented for the first time in an opposition brief, the court will not address it further.

ORDER – 4

> SOFTWARE and/or its components that you are utilizing and may provide upgrades or supplements to the SOFTWARE that may be automatically downloaded to your computer.

*See* Quackenbush Decl. (Dkt. # 151), Ex. C.  One of the Plaintiffs agreed to a EULA with a slightly different "Internet-based Services Components" paragraph, which authorized Microsoft to provide "upgrades or fixes" to the Windows XP software. *See* Quackenbush Decl. (Dkt. # 151), Ex. E ("the Weatherill EULA").  The Plaintiffs concede that WGA is a "supplement" to the Windows XP software, *see* 2d Am. Consol. Compl. ¶ 129, but contend that Microsoft nonetheless breached the EULA because WGA is not an "upgrade" or "fix."

Plaintiffs' concession that WGA is a "supplement" is fatal to the claim based on the "Internet-Based Services Components" provision quoted in its entirety above, because that provision expressly authorizes Microsoft to provide "supplements" for automatic download.

For purposes of the Weatherill EULA, assuming for the sake of argument that WGA is neither an "upgrade" nor a "fix," Plaintiffs' claim nonetheless fails because they have not identified any provision in the Weatherill EULA that prohibits Microsoft from distributing a non-upgrade or non-fix for automatic download.  The Weatherill EULA authorizes Microsoft to provide upgrades or fixes for automatic download, but does not state that *only* upgrades or fixes will be provided for automatic download.  Because Microsoft was not limited to providing only upgrades or fixes for automatic download, the Plaintiffs' claim for breach of contract on this ground must fail.

**3.    The EULA Does Not Prohibit the Collection of IP Addresses.**

The EULA prohibits Microsoft from transmitting "personally identifiable information" from the user's computer to Microsoft without the user's consent. *See* Kirkwood Decl. (Dkt. # 150), Ex. B ¶ 1.3 (Windows XP EULA), Ex. F (Windows XP

ORDER – 5

Service Pack 2 EULA). Plaintiffs contend that Microsoft breached that provision because WGA, as Microsoft admits, collects the user's Internet Protocol ("IP") address.

An IP address is a four-part number that enables e-mails, pictures, and other data to be transmitted via the Internet to a particular computer. *United States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007). When a person uses a computer to accesses the Internet, the computer is assigned an IP address by the user's Internet service provider. *United States v. Steiger*, 318 F.3d 1039, 1042 (11th Cir. 2003). An IP address does not identify a user's name or mailing address. *In re Charter Commc'ns*, 393 F.3d 771, 774 (8th Cir. 2005). Some Internet service providers assign static IP addresses that remain constant with regard to that particular user, but many assign dynamic IP addresses that change each time the user connects to the Internet. *Steiger*, 318 F.3d at 1042.

The parties agree that the EULA does not define what type of information is "personally identifiable." In order to guide the court's interpretation of the term, Plaintiffs direct the court to Microsoft's security glossary, available on its Web site, which defines "personally identifiable information" as:

> Any information relating to an identified or identifiable individual. Such information may include name, county, street address, e-mail address, credit card number, Social Security number, government ID number, IP address, or any unique identifier that its associated with [personally identifiable information] in another system. Also known as personal information or personal data.

Himmelfarb Decl. (Dkt. # 184), Ex. F.

Microsoft contends that because the security glossary is not part of the EULA or incorporated by reference therein, the security glossary is irrelevant to construing the contract claim. Microsoft also notes that Washington's anti-spyware statute does not include IP addresses in its definition of "personally identifiable information." *See* RCW 19.270.020(2). Microsoft also cites a case where a court explained that an IP address is not personal information. *See Klimas v. Comcast Cable Comm'cns, Inc.*, 465 F.3d 271,

ORDER – 6

276 n.2 (6th Cir. 2006) ("We further note that IP addresses do not in and of themselves reveal 'a subscriber's name, address, [or] social security number.' That information can only be gleaned if a list of subscribers is matched up with a list of their individual IP addresses."). *See also Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 *3 n.10 (C.D. Cal. May 29, 2007) ("As an IP address identifies a computer, rather than a specific user of a computer, it is not clear that IP addresses . . . are encompassed by the term 'personal information' in defendants' website's privacy policy).

Because the EULA does not incorporate the web glossary by reference, and there is no evidence that any of the Plaintiffs even read the glossary, the court finds that the web glossary is not helpful to construing the provision. Furthermore, the court finds that Microsoft's interpretation of "personally identifiable information," in the absence of any definition, is the only reasonable interpretation. In order for "personally identifiable information" to be personally identifiable, it must identify a person. But an IP address identifies a computer, and can do that only after matching the IP address to a list of a particular Internet service provider's subscribers. Thus, because an IP address is not personally identifiable, Microsoft did not breach the EULA when it collected IP addresses. Plaintiffs' contract claim on that ground must fail.

### 4. The EULA Does Not Prohibit the Installation of WGA Via Automatic Updates.

Plaintiffs' fourth and final contract claim contends that Microsoft breached the EULA by distributing WGA through the Automatic Updates program. Microsoft does not deny that WGA was distributed via Automatic Updates. But according to Plaintiffs, the Automatic Updates program may distribute only high-priority updates and WGA is not a high-priority update.

The EULA describes Windows XP's automatic features as follows:

> **AUTOMATIC INTERNET-BASED SERVICES.** The SOFTWARE features described below are enabled by default to connect via the Internet

ORDER – 7

> to Microsoft computer systems automatically, without separate notice to
> you. You consent to the operation of these features, unless you choose to
> switch them off or not use them. Microsoft does not use these features to
> collect any information that will be used to identify you or contact you. For
> more information about these features, please see the privacy statement at
> http://go.microsoft.com/fwlink/?LinkId=25243.

Kirkwood Decl., Ex. F at 36. The privacy statement referenced in that provision further explains one of the automatic Internet-based services, Automatic Updates:

> Any time you are online and a high priority product update becomes
> available, the Automatic Updates service notifies you through the Microsoft
> Windows system tray. Automatic Updates can be configured to guide you
> step-by-step through downloading and installing product updates. If you
> prefer a more automated experience, Automatic Updates can be configured
> to silently download and install product updates. Depending on how you
> configure Automatic Updates, *product updates and other select software*
> will be downloaded to your computer.

Himmelfarb Decl. (Dkt. # 184), Ex. K (emphasis added). As revealed by a review of the EULA provision and the privacy statement arguably incorporated by reference therein, no contractual language defines "high priority update" or states that only high-priority updates will be distributed via Automatic Updates.

The Plaintiffs' contract claim instead relies upon a definition from Microsoft's web security glossary, which defines a "high priority update" as:

> A classification used on the Windows Update Web site and by the
> Windows Update Service to recommend Microsoft software updates and
> drivers that help protect against the latest publicly known security threats
> and reliability issues. All software updates and drivers that can be installed
> by turning on Automatic Updates on your computer are classified as high
> priority. These can also be installed by visiting the Windows Update Web
> site.

Himmelfarb Decl. (Dkt. # 184), Ex. F. Because Plaintiffs contend that WGA did not provide protection "against the latest publicly known security threats and reliability issues," and thus is not a "high priority update," the Plaintiffs argue that Microsoft was

ORDER – 8

prohibited from distributing WGA via Automatic Updates.  Plaintiffs also reference Microsoft's "Frequently Asked Questions" web site, which states that Automatic Updates delivers only high-priority updates.  *See* Complaint ¶¶ 36-37.

As explained in the previous section, however, Plaintiffs have not identified a *contract provision* that states that only high-priority updates will be distributed via Automatic Updates.  Neither the web glossary nor any other web site has been incorporated by reference into the EULA terms.  Statements or definitions found on web sites unrelated to the EULA do not bind or obligate the parties, and cannot give rise to a claim for breach of contract.  Because Plaintiffs' claim is based on extracontractual language, their claim for breach of contract based on the "abuse of high priority updates" must fail.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion (Dkt. # 149) is GRANTED.  Because the Defendant is entitled to judgment against the Plaintiffs' contract claim, Plaintiffs' motion (Dkt. # 186) is DENIED.[4]

IT IS SO ORDERED.

DATED this 23RD day of June, 2009.

_____
The Honorable Richard A. Jones
United States District Judge

---

[4] Plaintiffs also moved to strike portions of the Defendant's reply brief and the supporting evidence.  *See* Pltfs.' Surreply (Dkt. # 194).  Plaintiffs contend that the Defendant introduces new argument for the first time in its reply brief, and that some of its supporting evidence is improper on evidentiary grounds.  The court disagrees that the Defendant's reply contains new argument, and it did not rely upon any of the disputed evidence for purposes of ruling on this motion.  Thus, the Plaintiffs' motion to strike is DENIED.

ORDER – 9