1

2

3

4

5

6

7

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

| | |
|---|---|
| BRIAN JOHNSON, et al, on behalf of themselves and all others similarly situated, <br><br>          Plaintiffs, <br><br>     v. <br><br> MICROSOFT CORPORATION, a Washington corporation, <br><br>          Defendant. | No.  CV 06-0900 RAJ <br><br> PLAINTIFFS' REPLY – MOTION FOR LEAVE TO AMEND <br><br> **Note on Motion Calendar: January 14, 2010** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND    - 0
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.     INTRODUCTION

1.     Plaintiffs agree to withdraw their newly-added, proposed claim for fraudulent misrepresentation, negligent misrepresentation and fraudulent concealment.

2.     The claims for injunctive relief are not new.  Microsoft asked for and received this precise list of injunctive relief through discovery responses provided in April 2008.

3.     Plaintiffs have no intention of reviving class claims *unless* there is a reversal of this Court's summary judgment ruling.  Therefore the proposed TACC correctly and appropriately sets forth the claims and contentions in issue in this litigation.

## II.     THE ADDED CAUSE OF ACTION FOR FRAUD

As stated above, Plaintiffs agree to withdraw the proposed fifth cause of action in the TACC for fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment.

Plaintiffs rational for filing these claims was as follows.  Prior to December 2009, this action was brought as a class action.  The class representatives initially brought claims that were amendable to class certification, and did not pursue causes of action that might present complications at the certification stage, even though they might otherwise be viable from an individual perspective.  Upon withdrawal of the class claims in December 2009, the individual plaintiffs were then free to bring claims that might otherwise present distractions in the context of class certification.  The same predicate factual allegations that are alleged in plaintiffs' CPA, unjust enrichment, and trespass claims also give rise to claims for fraud.

Microsoft's objection that the plaintiffs have known about their fraud claims and should have brought them when they were first known misses the point.  The addition of the fraud claims is not based on any newly discovered knowledge, but rather is based upon the change in the

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND        - 1
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

posture of the case (withdrawal of class claims), which made the fraud claims viable as an

individual claim.

   Plaintiffs have chosen to withdraw these claims in light of Microsoft's threat to re-depose

the plaintiffs.  This threat presents a cost-burden that far outweighs what any plaintiff might

recover in damages from Microsoft on their individual fraud claim.  It makes no sense, therefore,

to insist on the right to pursue a claim when the largest corporation in the world threatens to turn

the claim into a litigation burden that would far outweigh any potential recovery.

**III.    MICROSOFT HAS NO LEGITIMATE COMPLAINT REGARDING THE INJUNCTIVE RELIEF SOUGHT BY THE TACC**

   Microsoft's protestations over the injunctive relief sought in the TACC is much ado about

nothing.

 First, Microsoft was specifically apprised of each and every point of injunctive relief almost two

years ago, and well in advance of the depositions of all of the plaintiffs.

   On April 20, 2008, plaintiffs responded to Microsoft's First Set Of Interrogatories To

Newly Added Plaintiffs.  Specifically, Microsoft's Interrogatory No. 8 asked; "Describe the

nature of any injunctive, declaratory or equitable relief you seek in this case."   Plaintiffs

responded with a detailed list of 18 separate items of injunctive relief.  This list was complete and

inclusive, and is the source for the claims now reflected in the proposed TACC.  Microsoft was

provided the list for each and every item of injunctive relief more than 20 months ago.  *See*

Appendix A, attached hereto.

   Second, Microsoft deposed each of the plaintiffs after these interrogatory responses were

provided.  These interrogatory responses were introduced into the record by Microsoft as an

exhibit at each plaintiff's deposition.  *See*, e.g. Appendix B, attached hereto.

1

2

Third, none of the injunctive relief sought in the TACC is at variance with the relief

sought in the SACC. Each of the 16 specific demands for injunctive relief sought in the TACC is

3

4

encompassed and included within the 6 general points of injunctive relief sought in the prayer of

the SACC. *See* Appendix C, attached hereto. The TACC merely provides detail and specificity

5

6

with respect to the injunctive relief of which Microsoft was previously apprised. Plaintiffs

7

believed Microsoft would welcome the list of injunctive relief sought by plaintiffs being

8

formalized in the pleading, rather than leaving it specified only through discovery. Microsoft's

9

feigned alarm that Plaintiffs' injunctive relief is new, or a bolt from the blue, is disingenuous.

10

Fourth, Microsoft does not cite any law (because there is none), which prohibits a plaintiff

11

from seeking any injunctive relief the court finds appropriate based upon the proof presented at

12

trial.

13

14

## IV.     WITHDRAWAL OF THE CLASS CLAIMS

15

Microsoft raises a hue and cry over Plaintiffs decision to withdraw class claims prior to

16

the motion for class certification. Microsoft, claiming wrongdoing by plaintiffs, now demands a

17

hearing on class certification, or sanctions, or some kind of punitive restrictions on amendments

18

as a result.

19

There is utterly no legal or procedural support for any of these demands.

20

Plaintiffs' determination to withdraw the class claims was based upon several factors,

21

including:

22

23

1.      The current status of the case and the rulings consistently in favor of Microsoft on

24

all motions and contested issues;

25

26

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND      - 3
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

2.      The Court's scheduling of oral argument a mere five business days after plaintiffs were due to file their reply, which, given the thousands of pages of briefing, argument, and evidence submitted for the motion, appeared disadvantageous to plaintiffs;

3.      The grant of summary judgment in favor of Microsoft on plaintiffs contract claim;

4.      Microsoft's argument in its opposition to the class certification motion, that the damages provision of the contract would not be applicable or available as a remedy to the trespass or CPA claims, since the contract cause of action was eliminated by the summary judgment ruling. (Obviously, Plaintiffs do not agree with this argument, but it nonetheless was a consideration).

Plaintiffs' counsel, taking these (and other) factors into consideration, made a determination to withdraw the motion for class certification.  Plaintiffs' counsel has a duty to their clients to act in their best interests. Class counsel also has a duty to act in the best interests of the class.  The decision to withdraw the motion for class certification under these circumstances was overwhelmingly an act in the best interests of the individual clients and the members of the class.

There is no provision whatsoever for a defendant to be awarded fees when prevailing on a motion for class certification. Neither Rule 23, nor Rule 11, nor any case law of any jurisdiction provide for any kind of sanction or fees based upon a determination of whether a class may or may not be certified.

In this case, the threat of class certification has been eliminated.  The class claims (except for those subject to appeal), have been withdrawn from the litigation.  This was achieved prior to argument, ruling by the court, or reply by plaintiffs.   Thus, Microsoft has achieved what it sought to do at even less cost than would otherwise be expended if the issue had been fully briefed and argued.

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND        - 4
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

All cases providing for the assessment of any award of expenses entail the *addition* of claims after discovery has been taken, not the *withdrawal* of a claim. Microsoft seeks to turn this principle on its head and gain advantage from what is, in fact a benefit to Microsoft in the narrowing of the litigation against it.

## V.    THE ELLIS AMENDMENTS

The Ellis amendments are not amendments at all, but rather a preservation of the status quo for purposes of appeal. Ellis' claims must remain intact in the operative pleading in order for his appellate claims to remain viable.

It has long been the rule that "a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint." *London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1981). Citing, *Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Etc., Local 150,* 440 F.2d 1096 (9th Cir.), cert. denied, 404 U.S. 826, 92 S. Ct. 57, 30 L. Ed. 2d 54 (1971); *Loux v. Rhay,* 375 F.2d 55 (9th Cir. 1967); *Bullen v. De Bretteville, 239 F.2d 824 (9th Cir. 1956)*, cert. denied sub nom. *Treasure Company v. Bullen,* 353 U.S. 947, 77 S. Ct. 825, 1 L. Ed. 2d 856 (1957). Accord *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## VI.    THERE IS NO PREJUDICE TO MICROSOFT

With the withdrawal of the fraud claims, Microsoft's remaining claims of prejudice are reduced to three. None of the three result in any actual prejudice.

The Ellis contract/class claims are included for preservation of appellate rights. They have no impact on the present litigation, and only become relevant if the 9th Circuit Court of Appeal so instructs this Court.

The injunctive relief claims were provided by plaintiffs to Microsoft over two years ago and Microsoft has had every opportunity to engage in whatever discovery it chose to pursue.

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND        - 5
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

1  They are nothing more than an elaboration in the pleadings of what was already provided through

2  discovery and were included as a courtesy to Microsoft.

3      The additional allegations concerning the download, operation, and installation of

4  Validation verses Notifications has been a point of heated contention between the parties since the

5  inception of the litigation and has been the subject of substantial motion practice and discovery.

6  (*See*, e.g. Docket # 156.)  Because of Microsoft's efforts at obfuscation and obstruction, plaintiffs

7  have laid out in the operative pleading the precise factual allegations so that the litigation might

8  proceed based on clear allegations and not upon the intentionally confusing gobbledegook which

9  Microsoft has turned this issue into.  This is not prejudice – this is movement toward clarity and

10  truthful litigation.

11      Each of the amendments is designed to streamline and focus this lengthy litigation into a

12  concise, coherent, and pointed roadmap for the remainder of this litigation.  The amendments

13  achieve these goals, and Microsoft's claims of prejudice are geared more towards obstruction than

14  resolution.

## VII.    FOR THE RECORD

Microsoft's opposition is replete with misstatements of fact and distortions.   For the

record, a couple of the most egregious are listed (and corrected) below.

| | |
|---|---|
| "Twelve days before the December 30, 2007 deadline for Microsoft's opposition, however, Plaintiffs unexpectedly withdrew it. *See* Dkt. No. 126. Plaintiffs' last-minute maneuver forced Microsoft to scrap its nearly completed | Microsoft's counsel, Karl Quackenbush, actually suggested and recommended that plaintiffs withdraw the motion for class certification set for December 30, 2007 during a conversation with Scott Kamber a few days |

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND      - 6
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

| | |
|---|---|
| class certification opposition." <br><br> Opposition, page 3, *26 – page 4, *2 | before the withdrawal was filed. |
| "Indeed, Plaintiffs' proposed Third Amended Consolidated Complaint ("Third Amended Complaint") asserts class allegations in the dismissed breach of contract claim even though they told the Court they would remove all class allegations." <br><br> Opposition, page 4, *13-16 | Plaintiffs never "told the Court they would remove all class allegations."  Plaintiffs' counsel stated, repeatedly, that plaintiffs would be withdrawing the class allegations on plaintiffs' remaining claims.    Every time Mr. Quackenbush attempted to reframe plaintiff's counsel's statement into an "all class allegations" interpretation, he was corrected by plaintiffs' counsel that the class allegation withdrawal would affect the "remaining" claims. The proposed TACC conforms precisely to this representation. |

## VIII.   CONCLUSION

For the reasons stated above, plaintiffs respect request that plaintiffs' motion for leave to amend the SACC, as modified by plaintiffs' agreement to withdraw their fraud claims, be granted.


DATED this 8th day of January, 2010.


_____/s/_____
Alan Himmelfarb

| | |
|---|---|
| Alan Himmelfarb | |

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

| KamberEdelson, LLC<br>2757 Leonis Blvd.<br>Vernon, California 90058-2304<br>Telephone: (323) 585-8696<br>consumerlaw1@earthlink.net<br><br>Scott A. Kamber<br>KamberEdelson, LLC<br>11 Broadway, 22nd Floor.<br>New York, NY. 10004<br>Telephone: (212) 920-3072<br>skamber@kamberedelson.com<br><br>Jay Edelson<br>KamberEdelson, LLC<br>53 West Jackson Boulevard, Suite 1530<br>Chicago, Illinois 60604<br>Telephone: (312) 589-6370<br>epreston@kamberedelson.com<br>*Counsel for Brian Johnson, Brian Weatherill, Nathan Verrilli, James Grennan, and Charles Ellis* | William Houck<br>Houck Law Firm, PS.<br>William Houck (WA. Bar No. 13324)<br>4045 262nd Ave SE<br>Issaquah, WA 98029-5713<br>Telephone: (425) 392-711<br><br>David Breskin (WA. Bar No. 10607)<br>Breskin Johnson & Townsend, PLLC<br>999 Third Ave. Suite 4400<br>Seattle, WA 98104-4088<br>Telephone: (206) 652 8606<br><br>*Counsel for Engineered Process Controls LLC, and Martin Sifuentes* |
|---|---|

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND    - 8
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

# Appendix A

1

Honorable Richard A. Jones

2

3

4

5

6

UNITED STATES DISTRICT COURT

7

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

8

| | |
|---|---|
| BRIAN JOHNSON, et al, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>                    Defendant. | NO.  CV 06-0900 RAJ<br><br>PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST SET OF INTERROGATORIES TO NEWLY ADDED PLAINTIFFS |

9

10

11

12

13

14

15

16

17

18

19

20

        Plaintiffs Brian Weatherill ("Weatherill"), Nathan Verrilli ("Verrilli"), James Grennan

("Grennan"), and Charles Ellis ("Ellis") hereby respond to Defendant Microsoft Corporation's

First Set Of Interrogatories To Newly Added Plaintiffs.

21

22

23

24

25

26

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 1-

s.    By gathering information, at Microsoft's election, from the computer owner's computer, and sending that information back to Microsoft, the operation of the WGA programs infringes on the computer owner's right to privacy;

t.    By tying Class members' right to Windows XP "updates and fixes" to Class members installation of the separate WGA programs, in order to force Class members to install the WGA Validation Anti-Piracy Program;

u.    By tying Class members' right to Windows XP "updates and fixes" to whether Class members' computers continually pass the WGA Validation Anti-Piracy Program tests;

v.    By compromising the integrity, security, and ownership of class members' computers because the WGA Validation Anti-Piracy Program can be used by Microsoft or others to remotely control, reduce, or alter the functioning of class members' computers, or to collect additional personal data, without Class members' consent; and

w.    By forcing consumers to expend money, time, and resources in order to effectuate the removal of the WGA Validation Anti-Piracy Program installed on the computers of Class members without notice or consent.

8.    Describe the nature of any injunctive, declaratory or equitable relief you seek in this case.

**ANSWER**:

Plaintiffs seek the following injunctive declaratory and or equitable relief

1.    Removal of WGA from all computers in the United States on which it was installed.

2.    Reconfiguration of the WGA program so that it is a completely opt-in program.

3.    A complete uncoupling of WGA from all past, present, and future security and functionality updates of the XP operating system.  This includes any components originally included as part of the Windows XP package (such

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 10-

as Media Player, Internet Explorer, etc.).

4.  The provision of a one-button removal tool for WGA for all residents of the United States; said removal tool should operate as automatically and as seamlessly as the original installation.

5.  An independent audit of all information collected by Microsoft through its WGA program.

6.  An independent audit of all uses which Microsoft made of the information collected through its WGA program.

7.  An independent audit of all revenues Microsoft collected, generated, or otherwise obtained by virtue of its WGA program.

8.  An independent audit of all benefits obtained by Microsoft through the use of its WGA program.

9.  An independent audit to confirm the destruction of all data and information collected by WGA.

10. Disgorgement of all revenues Microsoft collected, generated, or otherwise obtained by virtue of its WGA program.

11. Disgorgement all benefits obtained by Microsoft through the use of its WGA program.

12. Independent oversight over Microsoft's Update program to insure that all Microsoft Updates are transparent as to what they are and what they do, including the ability to opt-out. This includes, but is not limited to:

    a.  clear, concise descriptions about the update in question;

    b.  presentation of any and all EULAs before any software is downloaded;

    c.  full disclosure prior to the retrieval of any information from the computer system of what information is being retrieved (sent back to Microsoft), why it is being retrieved, what it will be used for, how long it will be maintained, what will be done to protect such information; and when and how it will be disposed of;

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 11-

d. clear adequate, concise, and easily available help information for further inquiry into what the update does, how to remove it, etc.

13. Independent oversight over Microsoft's Update program to insure that Critical / High Priority Updates only include security updates and other such bug-fixes that can prevent / repair potential harm to the computer.

14. Independent oversight over Microsoft's Update program to insure that Critical / High Priority Updates never include "beta" software, non-security / bug-fixed related software, nor anything that does not completely relate to the security, integrity, and proper running of a person's computer.

15. With respect non-Critical / High Priority Updates, particularly those that add functionality, features, or software programs, etc. Microsoft must include an easily executable removal tool capability built-in to the update.

16. With respect all Updates, once a program is marked as "don't ask me again" it doesn't ask again.

17. Mainstream support for Windows XP through 2012.

18. Release of the source code of all versions of WGA.

Discovery is ongoing and Plaintiffs have not yet determined the nature and extend of further relief.

9. If you contend that the amount of damages sustained by each putative class member by reason of the acts alleged in the Second Amended Consolidated Complaint can be calculated in a common manner in a single proceeding, state what formula or method you intend to use to calculate each putative class member's damages.

**ANSWER**:        Plaintiffs contend that the amount of damages can be calculated in a common manner in a single proceeding using the formula set forth in the Windows XP EULA Clause entitled : "LIMITATION OF LIABILITY AND REMEDIES" whereby each class member is provided $5.00 or the cost of the Windows XP Software. Plaintiffs also contend that the court can devise any other means to calculate damages on a common basis.

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

10.     Describe every agreement you have with legal counsel or any other person or entity concerning the payment of counsel fees, expenses, and costs with respect to this action, including but not limited to (if the agreement so provides) who will advance and who is responsible for payment of the costs and expenses incurred in connection with the prosecution of this action and whether a fee in this action will be shared with any person not a member of your counsel's law firm.

**ANSWER**:     Plaintiffs object to this Interrogatory on the grounds that it seeks information that is protected by the attorney-client privilege.  Plaintiffs have a written contingency fee agreement with their counsel.

11.     Identify each putative class member or other non-expert witness who will testify (whether in person or by declaration or affidavit) in support of class certification in this case and summarize the person's testimony.

**ANSWER**:          It is anticipated that the following putative class members will testify in support of class certification:  Brian Johnson, Brian Weatherill, Nathan Verrilli , James Grennan, Charles Ellis, Engineered Process Controls, LLC,  and Martin Sifuentes.  Each of the class representatives are anticipated to submit testimony by way of declaration.  It is anticipated that each class representative will testify as to the facts and circumstances by which that person is or became a member of the class he/ it  purports to represent, and facts and circumstances addressing issues presented in the motion for class certification.  In addition, it is anticipated that each class representative will testify as to his/ its willingness to act as a class representative, and his/ its understanding of the duties and responsibilities of a class representative.

12.     Identify each person whom you expect to have testify as an expert witness (whether in person, by declaration, affidavit or expert report) in support of class certification in this case and, with respect to each such person, provide:

      (i)     the subject matter and the substance of the facts and opinions as to which the expert will offer an opinion;

      (ii)     his or her credentials and curriculum vitae, including a list of all publications by the witness within the preceding ten (10) years;

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 13-

(iii)    the compensation paid or to be paid for any study, report, or testimony; and

(iv)    a listing of all cases in which the expert has testified as an expert at a trial, hearing or by deposition, declaration or affidavit.

**ANSWER**:        Plaintiffs have not yet identified expert witnesses.

Objections and Answers dated this 30th day of April, 2008.

KamberEdelson, LLC

By_____/s/_____

Alan Himmelfarb

Jess G. Webster (Wa. Bar No. 11402)
Mikkelborg Broz Wells & Fryer PLLC
Jess G. Webster (WA. Bar No. 11402) Mitchell
A. Broz (WA. Bar No. 17095)
1001 Fourth Ave Suite 3600
Seattle, WA 98154-1115
(206) 823-5890

Alan Himmelfarb
KamberEdelson, LLC
2757 Leonis Blvd
Vernon, California 90058-2304
Telephone: (323) 585-8696
ahimmelfarb@kamberedelson.com

Scott A. Kamber
KamberEdelson, LLC
11 Broadway, 22nd Floor.
New York, NY. 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kamberedelson.com

Ethan Preston
KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530

David Breskin (Wa. Bar No. 10607)
BRESKIN JOHNSON & TOWNSEND PLLC
999 3rd Avenue, Suite 4400
Seattle, WA 98104
Phone: (206) 652-8660

William W Houck (WA. Bar No. 13324)
HOUCK LAW FIRM, PS.
4045 262nd Ave SE
Issaquah, WA 98029-5713
Telephone: (425) 392-711

*Counsel for Engineered Process Controls LLC, and Martin Sifuentes*

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 14-

Chicago, Illinois 60604
Telephone: (312) 589-6370
epreston@kamberedelson.com
*Counsel for Brian Johnson, Brian Weatherill,*
*Nathan Verrilli, James Grennan, Gary Mercer,*
*and Charles Ellis.*

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 15-

## PROOF OF SERVICE

(JOHNSON, *et al.*, v. MICROSOFT CORP.,   No.  C06-0900 RAJ)

I am a resident of the State of California, and over the age of 18, and not a party to within action; my business address is 2757 Leonis Blvd, Vernon, CA 90058.

On April 30, 2008, I served the within document(s)

1. **NEWLY-ADDED PLAINTIFFS' RESPONSES TO DEFENDANT MICROSOFT CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO NEWLY-ADDED EACH PLAINTIFFS**

| ☒ By email as indicated: | | |
|---|---|---|
| **Addressee** | **Represent** | **Service** |
| Gregory J. Hauck<br>Montgomery McCracken Walker & Rhoads<br>123 S. Broad St., 24th Floor<br>Philadelphia, PA 19109-1099<br>215-772-1500<br>Email: ghauck@mmwr.com | Microsoft | Email |
| Karl Justin Quackenbush<br>Riddell Williams<br>1001 4th Ave. Plaza, Ste. 4500<br>Seattle, WA 98154<br>206-624-3600<br>Fax: 206-389-1708<br>Email: kquackenbush@riddellwilliams.com | Microsoft | Email |
| Todd L. Nunn<br>Kirkpatrick & Lockhart Preston Gates Ellis LLP<br>925 Fourth Ave., Ste. 2900<br>Seattle, WA 98104-1158<br>206-623-7580<br>Fax: FAX 224-7095<br>Email: todd.nunn@klgates.com | Microsoft | Email |

Executed on April 30, 2008 at Los Angeles, California.

_____/s/_____
Alan Himmelfarb

PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST
SET OF INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 16-

# Appendix B

1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE


BRIAN JOHNSON, et al.

      Plaintiffs

vs.                              Case No. CV-06-0900-RAJ

MICROSOFT CORPORATION,
a Washington corporation


      Defendant.


DEPOSITION OF JAMES GRENNAN

TAKEN ON BEHALF OF THE DEFENDANT

ON JULY 9, 2008, BEGINNING AT 8:36 A.M.

IN OKLAHOMA CITY, OKLAHOMA


APPEARANCES

On behalf of the PLAINTIFFS:

Alan Himmelfarb
2757 Leonis Boulevard
Vernon, California 90058


On behalf of the DEFENDANT:

Gregory J. Hauck
123 South Broad Street
Philadelphia, Pennsylvania 19109

REPORTED BY:  Andrea J. Gorman, CSR, RPR

**98**

1  recall right now that I have sometime since WGA got on
2  my computer because they were checking to see what you
3  got and you are not going to get an update until you
4  do, but how many times, other than that time, which
5  had to be when automatic was turned off, not many.
6      Q.  Let me -- let me ask about your laptop
7  computer, okay?  Have you ever installed updates onto
8  that computer from this Microsoft website from which
9  you obtain updates?
10     A.  Again, I have no way of knowing.
11     Q.  And you don't know whether automatic
12  updates is turned on that computer?
13     A.  That's right, I do not without looking.
14     Q.  Well, do you know if that -- if your laptop
15  computer gets updated?
16     A.  No, I do not.
17     Q.  With respect to your wife's laptop
18  computer, do you know if any -- if you have ever
19  obtained updates and installed onto that computer
20  updates from the Microsoft website?
21     A.  I have had that computer too long to
22  remember, I really don't know.  I haven't used it for
23  several months.  I can tell you one thing, I have a
24  program called Invisus, I-N-V-I-S-U-S, which is my --
25  I believe it's the program, which is my firewall,

**99**

1  which is my -- keep all the junk off except those that
2  can get on, and it at one time until a month or so ago
3  was plaguing me with messages, there is an update to
4  this, there is an update to that, there is a critical
5  update, and from that is when I probably went and
6  looked at that update, but whether I downloaded it, I
7  don't know.
8      Q.  Was it a Microsoft update or was it an
9  update for something else?
10     A.  I -- I am not certain, but I remember they
11  did that and then a month or two or three ago, they
12  stopped doing that, they stopped putting out those --
13  those type of messages.  They put out a message like
14  there's a Trojan out that -- that is affecting so and
15  so and we established how to capture that so it won't
16  harm your computer.
17         As I recall, they also put out messages at
18  one time that there is an update that you should go
19  to, like, XP 2, whatever.  I can't remember whether
20  they gave me a hypertext to it or not.
21     Q.  But you don't know one way or
22  another whether these were Microsoft updates?
23     A.  No, I don't really recall.
24     (Lunch break from 11:55 a.m. to 12:40 p.m.)
25     Q.  (By Mr. Hauck)  We're back on the record

**100**

1  and you understand that you're still under oath,
2  correct?
3      A.  I'm still under oath, yes.
4      Q.  Now, is it your understanding that WGA is
5  composed of two programs, there's WGA validation and
6  WGA notifications?
7      A.  Yes.
8      Q.  Do you know what WGA validation does?
9      A.  WGA validation, I believe, is the program
10  that Microsoft put in my computer and the class
11  members' computer to determine whether they have a
12  valid copy.
13     Q.  Okay.  And do you know what WGA
14  notifications does?
15     A.  Yes, my understanding is the notification
16  is that with WGA on the computer, if you -- if you are
17  going to do an update, Microsoft is going to check to
18  see that you have a valid copy of XP and will notify
19  you if you don't and tell you you can buy a copy for
20  $149, something like that, less than what I paid for
21  it.
22     Q.  Okay.  Before you installed WGA on any of
23  your computers, did you review any documents or
24  websites about WGA?
25         MR. HIMMELFARB:  Objection misstates --

**101**

1  assumes facts not in evidence and misstates his
2  testimony.
3      A.  I think I've already answered it.  I don't
4  recall.
5      (Grennan's Exhibit No. 13 marked for
6      identification)
7      Q.  (By Mr. Hauck)  Okay.  I'm putting in front
8  of you a document that's been marked as Grennan 13.
9  Can you please review the document and familiarize
10  yourself with it.  You don't need to review it word
11  for word, I just want you to have a sense as to what
12  the document is.
13     A.  Yes, let me -- I've seen all this before.
14  Yeah.  I have a copy.
15     Q.  Okay.
16     A.  Before this copy.
17     Q.  Have you seen this document before?
18     A.  Yes, I've seen it before, counsel furnished
19  it to me.
20     Q.  Okay.  Now, I want you to flip to the
21  second -- I'm sorry, the third to the last page of the
22  document.
23     A.  The one that has my signature?
24     Q.  Yes.
25     A.  Yes, that's my signature.

26 (Pages 98 to 101)

102

1    Q.  Now, if you look at the top of that
2  document, it says, (quoted as read):
3    "I, James Grennan, being first duly sworn
4  declare that I have read the foregoing answers to
5  defendant Microsoft Corporation's first set of
6  interrogatories to newly added plaintiffs, know the
7  contents thereof with respect to those responses that
8  are attributable to me and believe the same to be true
9  and correct."
10    Do you see that?
11    A.  Yes, I do.
12    Q.  And beneath that, is that your signature?
13    A.  Yes, it is.
14    Q.  And by signing this document, were you
15  verifying that the answers contained in this document
16  were true and accurate?
17    A.  That I did what?
18    Q.  When you signed this verification, was it
19  your understanding that you were verifying that the
20  answers contained in this document were true and
21  correct?
22    A.  Yes, at that time, to the best of my
23  knowledge.
24    Q.  Can you direct your attention to page 3?
25    A.  Uh-huh.

103

1    Q.  Question number 1 in the middle of the page
2  says (quoted as read):
3    "For each copy of WGA validation and WGA
4  notification software that was installed on any of
5  your computers, identify, one, the update service or
6  other source from which the software was downloaded,
7  two, the date on which the software was installed,
8  and three, the manufacturer and model number of the
9  computer on which the software was installed."
10    Do you see that?
11    A.  Yes.
12    Q.  Now, if you flip to the next page, towards
13  the middle it says "Grennan;" do you see that?
14    A.  Yes.
15    Q.  And beneath that there are your answers to
16  this interrogatory, correct?
17    A.  Yes.
18    Q.  And you've provided answers with respect to
19  all three computers that you owned; is that correct?
20    A.  That's correct.
21    Q.  And the first set of answers pertains to
22  your desktop computer, right?
23    A.  That's correct.
24    Q.  The second set of answers pertains to your
25  wife's laptop, correct?

104

1    A.  Yes.
2    Q.  And then the third set of answers pertains
3  to your laptop, correct?
4    A.  Yes.
5    Q.  Now, I want to focus on your desktop right
6  now, okay?
7    A.  Okay.
8    Q.  Now, for your desktop, the answer indicates
9  that WGA was installed on April 2nd, 2007.  Do you see
10  that?
11    A.  Yes.
12    Q.  Okay.  How do you know that?
13    A.  I would imagine I searched for -- on my
14  desktop for wgalogon.dll and came up with the date of
15  4-2-2007.
16    Q.  So you obtained it from the log file?
17    A.  Obtained it from the . . .
18    Q.  You obtained the date from the log file, is
19  that what you are saying?
20    A.  The line file?
21    Q.  The log file.
22    A.  The log file?  I gather that's probably
23  true if that's -- DLL is the log file.
24    Q.  I'm asking, where did you obtain it from?
25    A.  Pardon?

105

1    Q.  Where did you obtain that date from?
2    A.  I obtained it on my computer.
3    Q.  Okay.  You don't know from where on your
4  computer?
5    A.  I know that wgalogon.dll on my computer has
6  a date 4-2-2007.
7    Q.  Do you know whether that date reflects the
8  date of installation?
9    A.  I have no knowledge.
10    Q.  Well, why did you put April 2nd, 2007 as
11  the answer?
12    A.  Because that's what wgalogon.dll told me on
13  my desktop.
14    Q.  And you assumed that that was reflecting
15  the date of installation of WGA?
16    A.  That was my -- my best answer.  I assumed
17  that the answer to Interrogatory Number 1 was right or
18  I wouldn't have put it there.
19    (Grennan's Exhibit No. 14 marked for
20    identification)
21    Q.  (By Mr. Hauck)  Okay.  I'm putting in front
22  of you a document that has been marked as Grennan 14.
23  Can you review this document and let me know when
24  you're finished?
25    A.  Yes, I'm finished.

27 (Pages 102 to 105)

1

2                                                                          Honorable Richard A. Jones

3

4

5

6                              UNITED STATES DISTRICT COURT
7                             WESTERN DISTRICT OF WASHINGTON
                                        AT SEATTLE
8
     BRIAN JOHNSON, et al, on behalf of              NO.  CV 06-0900 RAJ
9    themselves and all others similarly situated,

10                          Plaintiffs,              PLAINTIFFS RESPONSES TO
                                                    MICROSOFT'S FIRST SET OF
11          v.                                      INTERROGATORIES TO NEWLY ADDED
                                                    PLAINTIFFS
12
     MICROSOFT CORPORATION,
13   a Washington corporation,

14                          Defendant.
                                                    EXHIBIT
15
                                                      13
16                                                  GRENNAN
17

18

19
            Plaintiffs Brian Weatherill ("Weatherill"), Nathan Verrilli ("Verrilli"), James Grennan
20
     ("Grennan"), and Charles Ellis ("Ellis") hereby respond to Defendant Microsoft Corporation's
21
     First Set Of Interrogatories To Newly Added Plaintiffs.
22

23

24

25

26
     PLAINTIFFS RESPONSES TO MICROSOFT'S FIRST              KamberEdelson, LLC
     SET OF INTERROGATORIES TO NEWLY ADDED              53 West Jackson Boulevard, Suite 1530
     PLAINTIFFS                                              Chicago, Illinois 60604
     CASE NO. CV06_0900 RAJ                             Telephone: (312) 589-6370
                                    - 1 -

Brian Philip Weatherill                                              August 6, 2008

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE


BRIAN JOHNSON, et al.,

     Plaintiffs,

vs.                                    No. CV 06-0900-RAJ

MICROSOFT CORPORATION, a

Washington corporation,

     Defendant.

_____/


Deposition of

BRIAN PHILIP WEATHERILL

Wednesday, August 6, 2008


Reported by:

SHARON CABELLO, RPR

CSR No. 3080

Job No. 691746

CERTIFIED
COPY

Brian Philip Weatherill

Page 164
August 6, 2008

Q.      MR. SKOK:  I'm going to show you what has been
marked as Exhibit Weatherill 16.  Take a moment and
take a look.  This is Plaintiff's Responses to
Microsoft's First Set of Interrogatories to Newly Added
Plaintiffs.

A.      Okay, I believe I'm ready.

Q.      Take a look at page 16, Exhibit Weatherill 16.

A.      Yes.

Q.      You see it says "Verification.  I, Brian
Weatherill, being first duly sworn, declare that I have
read the foregoing Answers to Defendant Microsoft
Corporation's First Set of Interrogatories to Newly
Added Plaintiffs, know the contents thereof with
respect to those responses that are attributable to me,
and believe the same to be true and correct."

        You see that?

A.      Yes.

Q.      And there is a signature under there.  You see
that?

A.      Yes.

Q.      Is that your signature?

A.      It is, yes.

Q.      And you understood that by signing this you
were verifying the accuracy, truthfulness and
completeness of the answers regarding you in this

Esquire Deposition Services          520 Capitol Mall, Suite 250          Sacramento CA 95814
Phone: (916) 448-0505                  1-800-610-0505                      Fax: (916) 448-8726

dad7733d-782b-4d91-aec6-c68a278146a9

1

```
1              UNITED STATES DISTRICT COURT
              WESTERN DISTRIC OF WASHINGTON
2                     AT SEATTLE

3                          No. CV 06-0900-RAJ

4

5    *******************************          CERTIFIED
     BRIAN JOHNSON, et al.,                   TRANSCRIPT
6        Plaintiffs;

7        vs.

8    MICROSOFT CORPORATION, a
     Washington corporation,
9        Defendant.
     *******************************
10

11

12       DEPOSITION OF CHARLES ELLIS, a witness

13   called on behalf of the Defendant, pursuant

14   to the Federal Rules of Civil Procedure,

15   before Kristin Kelley, a Registered

16   Professional Reporter and Notary Public in

17   and for the Commonwealth of Massachusetts,

18   at the offices of Goodwin Proctor, 53 State

19   Street, Boston, Massachusetts, on Monday,

20   July 21, 2008, commencing at 8:34 a.m.

21

22

23

24

25
```

61

your custom built computer?

It is my understanding that when the
notifications program was downloaded the
validation program had already been
installed and cannot be removed, so given
the information that I know of presented by
Microsoft it should still be on my computer.

Which one?

The validation.

So it's your belief that WGA validation is
installed on your custom built computer?

Right.  It's my understanding there's no way
to remove it once it's installed.

Do you know whether WGA notification is
installed on your computer?

To the best of my knowledge, it is not.

        (Interrogatories marked Exhibit
No. 8 for Identification.)

I've put in front of you a document marked
as Ellis 8.  Can you please take a look at
the document and let me know when you're
finished.

        MR. HAUCK:  Do you mind taking a
break right now?

        MR. HIMMELFARB:  Fine.

62

(Recess.)

I've put in front of you a document that's
marked as Ellis 8.  Can you familiarize
yourself with that document and let me know
when you are finished.

I believe I'm familiar enough with it.

Can you flip to the second to last page.

Page 19?

Yes.  At the top it says "verification".  Do
you see that?

Yes.

It says "I, Charles Ellis, being first duly
sworn declare that I have read the foregoing
answers to defendant Microsoft Corporation's
first set of interrogatories to newly added
plaintiffs, know the contents thereof with
respect to those responses that are
attributable to me, and believe the same to
be true and correct".  Do you see that?

I do.

Beneath that is that your signature?

Yes.

By signing it was it your understanding that
you were verifying the accuracy of the
answers contained within this document?



Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JHNSON, et al, on behalf of
and all others similarly situated,

        Plaintiffs,

JT CORPORATION,
on corporation,

        Defendant.

NO.  CV 06-0900 RAJ

PLAINTIFFS RESPONSES TO
MICROSOFT'S FIRST SET OF
INTERROGATORIES TO NEWLY ADDED
PLAINTIFFS

tiffs Brian Weatherill ("Weatherill"), Nathan Verrilli ("Verrilli"), James Grennan

), and Charles Ellis ("Ellis") hereby respond to Defendant Microsoft Corporation's

Interrogatories To Newly Added Plaintiffs.

RESPONSES TO MICROSOFT'S FIRST
ERROGATORIES TO NEWLY ADDED

06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370

- 1 -

# Appendix C

**Appendix C**
**Injunctive Relief Compared – SACC vs TACC**

| Second Amended Consolidated Complaint (Prayer for Relief ) | Third Amended Consolidated Complaint (Paragraph 219) |
|---|---|
| (i) prohibiting Defendant from engaging in the acts alleged above; | b. Reconfiguration of the WGA program so that it is a completely opt-in program.<br><br>c. A complete uncoupling of WGA from all past present and future security and functionality updates of the XP operating system. This includes any components originally included as part of the Windows XP package (such as Media Player, Internet Explorer, etc.).<br><br>l. Independent oversight over Microsoft's Update program to insure that all Microsoft Updates are transparent as to what they are and what they do, including the ability to opt-out. This includes, but is not limited to:<br>    i. clear, concise descriptions about the update in question;<br>    ii. presentation of any and all EULAs before any software is downloaded;<br>    iii. full disclosure prior to the retrieval of any information from the computer system of what information is being retrieved (sent back to Microsoft), why it is being retrieved, what it will be used for, how long it will be maintained, what will be done to protect such information; and when and how it will be disposed of;<br>    iv. clear adequate, concise, and easily available help information for further inquiry into what the update does, how to remove it, etc.<br><br>m. Independent oversight over Microsoft's Update program to insure that Critical / High Priority Updates only include security |

| | |
|---|---|
| | updates and other such bug-fixes that can prevent / repair potential harm to the computer.<br><br>n. Independent oversight over Microsoft's Update program to insure that Critical / High Priority Updates never include "beta" software, non-security / bug-fixed related software, nor anything that does not completely relate to the security, integrity, and proper running of a person's computer.<br><br>o. With respect non-Critical / High Priority Updates, particularly those that add functionality, features, or software programs, etc. Microsoft must include an easily executable removal tool capability built-in to the update.<br><br>p. With respect all Updates, once a program is marked as "don't ask me again" it doesn't ask again. |
| (ii) requiring Defendant to disgorge all of its ill-gotten gains to Plaintiffs and the other Class members, or to whomever the Court deems appropriate; | j. Disgorgement of all revenues Microsoft collected, generated, or otherwise obtained by virtue of its WGA program.<br><br>k. Disgorgement all benefits obtained by Microsoft through the use of its WGA program. |
| (iii) requiring Defendant to delete all data surreptitiously or otherwise collected through the acts of unfair competition or deceptive trade practices alleged above; | i. An independent audit to confirm the destruction of all data and information collected by WGA. |
| (iv) requiring Defendant to provide Plaintiffs and the other class members a tool to remove WGA in a manner at least as facile as it was installed, and an opportunity to decline any future installation of WGA; | a. Removal of WGA from all computers in the United States on which it was installed.<br><br>d. The provision of a one-button removal tool for WGA for all residents of the United States; said removal tool should operate as automatically and as seamlessly as the original installation. |
| (v) awarding Plaintiff and class members full restitution of all monies wrongfully | |

| | |
|---|---|
| acquired by Defendant by means of the wrongful conduct alleged herein; and | |
| (vi) ordering an accounting and constructive trust imposed on the data, funds or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendant; | e. An independent audit of all information collected by Microsoft through its WGA program.<br><br>f. An independent audit of all uses which Microsoft made of the information collected through its WGA program.<br><br>g. An independent audit of all revenues Microsoft collected, generated, or otherwise obtained by virtue of its WGA program.<br><br>h. An independent audit of all benefits obtained by Microsoft through the use of its WGA program. |

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on January 8, 2010, I electronically filed the foregoing with the Clerk

3

of the Court using the CM/ECF system which will send notification of such filing to the

4

following:

5

| Karl J. Quackenbush<br>Gavin W. Skok<br>RIDDELL WILLIAMS P.S. | Charles B. Casper<br>Gregory J. Hauck<br>MONTGOMERY MCCRACKEN<br>WALKER & RHOADS, LLP | Todd Nunn<br>KIRKPATRICK & LOCKHART<br>PRESTON GATES ELLIS LLP |
|---|---|---|

6

7

8

9

Executed on January 8, 2010 at Los Angeles, California.

10

_____/s/_____

11

Alan Himmelfarb

12

| Alan Himmelfarb<br>KamberEdelson, LLC<br>2757 Leonis Blvd.<br>Vernon, California 90058-2304<br>Telephone: (323) 585-8696<br>consumerlaw1@earthlink.net<br><br>Scott A. Kamber<br>KamberEdelson, LLC<br>11 Broadway, 22nd Floor.<br>New York, NY. 10004<br>Telephone: (212) 920-3072<br>skamber@kamberedelson.com<br><br>Jay Edelson<br>KamberEdelson, LLC<br>53 West Jackson Boulevard, Suite 1530<br>Chicago, Illinois 60604<br>Telephone: (312) 589-6370<br>epreston@kamberedelson.com<br>*Counsel for Brian Johnson, Brian*<br>*Weatherill, Nathan Verrilli, James*<br>*Grennan, and Charles Ellis* | William Houck<br>Houck Law Firm, PS.<br>William Houck (WA. Bar No. 13324)<br>4045 262nd Ave SE<br>Issaquah, WA 98029-5713<br>Telephone: (425) 392-711<br><br>David Breskin (WA. Bar No. 10607)<br>Breskin Johnson & Townsend, PLLC<br>999 Third Ave. Suite 4400<br>Seattle, WA 98104-4088<br>Telephone: (206) 652 8606<br><br>*Counsel for Engineered Process Controls*<br>*LLC, and Martin Sifuentes* |
|---|---|

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' REPLY –
MOTION FOR LEAVE TO AMEND        - 9
CASE NO. CV06_0900 RAJ

KamberEdelson, LLC
53 West Jackson Boulevard, Suite 1530
Chicago, Illinois 60604
Telephone: (312) 589-6370